IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JAMES RICHARDS, <br> Institutional ID No. 02346971 <br><br> Plaintiff, <br><br> v. <br><br> MARSHA MCLANE, <br> TCCO Executive Director, *et al.*, <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | No. 5:25-CV-00075-H-BV |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE[1]**

Pro se plaintiff James Richards, a civilly detained Sexually Violent Predator (SVP), filed a second emergency motion for a temporary restraining order (TRO) under Federal Rule of Civil Procedure 65(a). Dkt. No. 50. Defendants Management Training & Corporation (MTC) and Marsha McLane filed their responses. Dkt. Nos. 52, 54. For the reasons explained below, the undersigned recommends that the United States District Judge **DENY** the motion. *See* Dkt. No. 46 (order of referral).

1.  **Factual and procedural background**

Richards alleges that the Texas Civil Commitment Center's (TCCC) gave notice to residents that on June 23, 2025, its administrators would "begin removing and reviewing MP3 players from the facility," and that "GMEE and other players with video

---

[1] Not all parties have consented to proceed before a magistrate judge; therefore, the undersigned makes these findings, conclusions, and recommendation in accordance with the referral order, Dkt. No. 46.

capabilities [would] no longer be authorized, except for clients who have reached the Tier 4 and [Advanced Group Environment (AGE)] status." Dkt. No. 29 at 10. The proffered reason for the removal was that there had been "multiple incidents . . . involving possession of pornographic material, utilization of [artificial intelligence], and accessing internet hotspots through these devices." *Id.* Based on this notice, Richards filed his first emergency motion for TRO, seeking to "enjoin[] MTC, its officers, agents, servants, employees, and attorneys, or any other persons who are in active concert or participation, from confiscating Plaintiff's MP4 device which he uses as a jailhouse lawyer, and which contains all of his legal materials, including his litigation in this case and one other, until further order issues in this matter." *Id.* at 1. After MTC responded that it had not yet finalized its policy and did not intend to execute the removal at that time, the Court denied the motion as moot. Dkt. No. 37 at 2.

Richards has now filed a second emergency motion for TRO. Dkt. No. 50. In it, he alleges that on September 1, 2025, Defendants posted another memo announcing that MP3 and MP4 devices would be taken, and such confiscations began the very next day. *Id.* at 3–4. He claims that his MP4 device was confiscated on September 2, 2025, along with his keyboard, mouse, and charging cord. *Id.* at 4. He claims that others have also had their electronics confiscated. *Id.*

Richards alleges that he has suffered substantial harm because the confiscation of his device "has reduced his ability to timely submit prosecute litigation" by "approximately 50%." *Id.* He alleges that he is "a jailhouse lawyer" and "is at risk of having litigation dismissed for failure to prosecute or timely prosecute." *Id.* He explains

that with his MP4 device, "he was able to prepare and print documents from his cell/room on weekends and after law library hours." *Id.* But without this ability, he claims that he will be required to ask for extensions. *Id.* at 5.

Richards also argues that his MP4 player is a reasonable alternative because the law library is "woefully inadequate." *Id.* at 6. He argues that there are only "[thirteen] computers" for approximately five hundred residents. *Id.* at 5–6. He also contends the law library serves as a general computer lab, thus restricting his access to legal materials. *Id.* Richards alleges that the law library "is only open for 3 ½ hours on Mondays and Tuesdays, and 6 hours the remainder of the week." *Id.* at 7 (emphasis omitted).

In response, Defendants contend that the original notice informed TCCC residents that after August 31, 2025, they would no longer be able to use any MP3 or other electronic devices/media players in educations areas, including the law library. Dkt. No. 52 at 5; *see* Dkt. Nos. 54 at 2–3; 54-3 at 2. TCCC residents were advised to transfer their legal materials to a USB that they could purchase or that would be provided at no cost for those who could not purchase one. Dkt. No. 52 at 2–3 (citing Dkt. No. 53 at 4). Defendants state that Richards and other residents had ample opportunity to do so. Dkt. Nos. 52 at 5; 54 at 2–3. Moreover, Defendants allege that residents have access to a law library with fifteen computers that is open Monday through Friday from 8:00 a.m. to 3:45 p.m., although those hours are slightly more limited on Mondays and Tuesdays. Dkt. No. 52 at 3; *see* Dkt. No. 54-5 at 2. According to Defendants, "Plaintiff now has greater access to the law library's legal resources than at any time in the past." Dkt. No. 54 at 2.

3

## 2. Legal Standard

Federal Rule of Civil Procedure 65 permits the Court to issue a TRO. Fed. R. Civ. P. 65. "Like a preliminary injunction, a temporary restraining order is an extraordinary remedy which should not be granted unless the movant has clearly carried the burden of persuasion on the same four elements of obtaining a preliminary injunction." *Avantax Plan. Partners, Inc. v. Walloch*, No. 3:24-CV-1707-K, 2024 WL 3843574, at *1 (N.D. Tex. July 31, 2024) (internal quotation marks and citation omitted). TROs serve to "preserve, for a very brief time, the status quo, so as to avoid irreparable injury pending a hearing on the issuance of a preliminary injunction." *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 829 (5th Cir. 1976).

To obtain a preliminary injunction or TRO, a movant must show:

1. A substantial likelihood of success on the merits of his case;

2. A substantial threat of irreparable injury if the injunction is not granted;

3. The threatened injury to the movant outweighs any damage the injunction will cause the non-movant; and

4. The injunction will not have an adverse effect on the public interest.

*Women's Med. Ctr. of Nw. Hous. v. Bell*, 248 F.3d 411, 418–20 (5th Cir. 2001).

## 3. Analysis

Civil committees have a constitutional right to access to courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Bohannan v. Doe*, 527 F. App'x 283, 298 (5th Cir. 2013) (per curiam). However, there is no "freestanding right" to access the courts. *Lewis v. Casey*, 518 U.S. 343, 351. "[T]o prevail on an access to courts claim, a resident must

4

demonstrate prejudice or harm by showing that his ability to pursue a nonfrivolous, arguable legal claim was hindered by the defendants' actions." *Wilson v. Texas Civ. Commitment Ctr. Facility Dir.*, No. 5:20-CV-267-H-BQ, 2021 WL 2653528, at *3 (N.D. Tex. May 11, 2021) (internal quotation marks and citations omitted), *R. & R. adopted by* 2021 WL 2652525 (N.D. Tex. June 28, 2021). To determine "whether a law library adequately provides meaningful access to the courts," the Court must ask "whether the facility will enable the [residents] to fairly present their complaints to a district court." *Id.* (quoting *Cruz v. Hauck*, 627 F.2d 710, 720 (5th Cir. 1980)).

Without factual support, Plaintiff concludes that he is "at risk of having litigation dismissed for failure to prosecute or timely prosecute." Dkt. No. 50 at 4. But he has not shown that he has an arguable legal claim that he has been hindered from presenting. This failure makes it difficult to see that he has any likelihood—much less a *substantial* likelihood—of success on the merits.

Moreover, Richards does not show any risk of irreparable injury because aside from his own conclusory statements, he makes no showing regarding the alleged inadequacy of the law library to provide meaningful access to the courts. Richards has repeatedly been on the law library schedule since the confiscation, and his records show that in just one week he logged nine and a half hours in the law library. Dkt. No. 50 at 20; *see San Miguel v. McLane*, No. 5:19-CV-096-BQ, 2019 WL 3948345, at *3–4 (N.D. Tex. July 29, 2019), *R. & R. adopted sub nom*, 2019 WL 3947753 (N.D. Tex. Aug. 21, 2019) (denying plaintiff's TRO when he acknowledged he received law library time for one and a half hours a week but believed it was not *enough* library time). Given these

5

facts, Richards has not established that the confiscation of his device presents a substantial threat of irreparable injury. *See Wilson*, 2021 WL 2653528, at *3 (recommending dismissal of SVP's access-to-courts claim where he had not demonstrated that lack of access to the library was causing harm). While he might find it more convenient to work from his cell at the days and times he chooses, he has not shown that he cannot complete his legal work by using the law library instead.

Defendants assert that they are preparing a second computer room with ten computers set to be available for residents by the end of October 2025. Dkt. Nos. 52 at 3 (citing Dkt. No. 53 at 2); 54 at 4. While that should be helpful in ensuring TCCC residents have even more access to the courts in the future, the undersigned did not take that assertion into consideration in its recommendation regarding access at this time.

Finally, the undersigned observes that Richards was able to draft and file his motion by September 10th after his device was confiscated on September 2nd. *See* Dkt. No. 50 at 14. This serves as yet another indicator that Defendants' actions have not denied Richards access to the courts, and he has not shown a substantial likelihood of success on the merits or that the confiscation is likely to cause irreparable harm.

### 4. Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's second motion for TRO. Dkt No. 50.

## 5. Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: September 30, 2025.

*Amy Burch*
**AMANDA 'AMY' R. BURCH**
**UNITED STATES MAGISTRATE JUDGE**