IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JAMES RICHARDS, Institutional ID No. 02346971, Plaintiff, | § § § § | |
| v. | § § | No. 5:25-CV-00075-H-BV |
| MARSHA MCLANE, TCCO Executive Director, *et al.*, Defendants. | § § § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pro se Plaintiff James Richards, a sexually violent predator (SVP) confined at the

Texas Civil Commitment Center (TCCC), filed this civil-rights action against Defendants

Marsha McLane, who serves as Executive Director of the Texas Civil Commitment

Office (TCCO), and Management & Training Corporation (MTC), the private company

that operates the TCCC. United States District Judge James Wesley Hendrix referred this

case for pretrial management under 28 U.S.C. § 636(b)(1)(A), and the undersigned

magistrate judge submits these findings, conclusions, and recommendation in accordance

with the referral order. For the reasons explained below, the recommendation is that

Defendants' motions to dismiss be **GRANTED**, with Richards's official-capacity claims

against McLane for retrospective relief being dismissed without prejudice and all other

claims being dismissed with prejudice.

1.    **Richards, a civilly confined SVP, alleges violations of his civil rights by personnel associated with his confinement.**

Richards was civilly adjudged to be an SVP as defined by Texas Health & Safety Code § 841.003. After Richards completed his criminal sentence, Texas transferred him to the TCCC in Littlefield, where he remains confined for inpatient treatment in accordance with the provisions of Texas Health & Safety Code § 841.081. Richards's claims are set out in his first amended complaint, and they flow from aspects of his civil commitment. *See* Dkt. No. 10.

Richards purports to bring his claims as a class representative of TCCC residents. *Id.* at 1; *see also* Dkt. No. 22 (motion to certify class). He claims that Defendants routinely violate residents' due process rights by creating and enforcing an "unconstitutional . . . treatment scheme that is punitive in effect" and "fail[s] provide appropriate treatment" for SVPs. Dkt. No. 10 at 4. He further claims that the TCCO "periodically places panels on hold to purposely delay [his] progression in the treatment program." *Id.* at 5. He asserts that TCCC staff lack adequate training, education, and experience in sex-offender treatment, and he expresses general dissatisfaction with the treatment curriculum. *Id.* at 6, 9, 32.

Richards alleges that McLane has interfered with his treatment and that she created and enforces unconstitutional policies. *Id.* at 3. He specifically alleges that she is responsible for "continual amendment of the treatment curriculum over the years, which substantially delays movement from one tier to the next." *Id.* at 6. He accuses McLane of making "arbitrary administrative decisions" that often "supersede and override MTC's

2

professional decisions or opinions by the licensed sex offender treatment providers, or other treatment professionals." *Id.* at 22. He asserts that "written policies . . . arbitrarily punish without due process." *Id.* at 15–17.

Richards also complains about the conditions of the TCCC facility, describing it as a "maximum security prison" rather than a treatment facility. *Id.* at 10–11. In particular, he criticizes MTC's use of a secured management unit (SMU) which "is MTC's version of the barbaric and outlawed solitary confinement." *Id.* at 11.

Richards seeks many forms of relief including: (1) declaratory judgment proclaiming several of Defendants' alleged actions unconstitutional and unlawful, (2) permanent injunctive relief regarding the TCCO policies and procedures he complains of; (3) the appointment of "independent expert panel(s)," which would oversee the movement of residents between tiers; and (4) appointment of a "special master" to "oversee the implementation of" the Court's order. *Id.* at 41–44.

McLane moves to dismiss the claims against her under Federal Rule of Civil Procedure 12(b), asserting a lack of subject-matter jurisdiction under subsection (b)(1) and failure to state a claim under subsection (b)(6). Dkt. No. 26. MTC also moves to dismiss under Rule 12(b)(6). Dkt. No. 28.

## 2. The Court must dismiss claims that fail to meet certain pleading standards.

### A. Rule 12(b)(1) standards

Rule 12(b)(1) governs challenges to a court's subject-matter jurisdiction. When a Rule 12(b)(1) motion is filed with other Rule 12 motions, a court should consider the jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena,*

3

561 F.2d 606, 608 (5th Cir. 1977). "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (internal quotation marks and citation omitted).

In evaluating its jurisdiction, a court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). The district court has substantial authority to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981) (citation omitted). A court should only grant a motion to dismiss for lack of subject-matter jurisdiction when it is convinced that the plaintiff cannot prove any set of facts that would entitle him to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The plaintiff bears the burden of establishing subject-matter jurisdiction. *See Ramming*, 281 F.3d at 161.

## B.    Rule 12(b)(6) standards

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under this standard, a court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff, while the plaintiff must allege facts supporting each element of the cause of action. *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Factual allegations must go beyond mere speculation, and the court does not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Any ambiguities in controlling substantive law must be resolved in the plaintiff's favor. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). In reviewing a motion to dismiss under Rule 12(b)(6), a court generally examines the complaint and any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

### 3.   Richards's claims should be dismissed.

#### A.   Richards may not bring class claims.

Richards attempts to bring claims against Defendants on behalf of himself and a class of civilly committed individuals at the TCCC. But Richards is proceeding pro se, and "courts have generally held" that such plaintiffs "may not serve as class counsel because they are ill-suited to protect the interests of the class." *Armour v. Davis*, No. 6:18-CV-535, 2020 WL 2850140, at *22 (E.D. Tex. June 1, 2020) (citing *McGrew v. Tex. Bd. of Pardons & Paroles*, 47 F.3d 158, 162 (5th Cir. 1995)); *see also* Fed. R. Civ. P. 23. Indeed, under Fifth Circuit precedent, "those not licensed to practice law may not

5

represent the legal interests of others." *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 210 (5th Cir. 2016).

Richards does not claim that he is licensed to practice law. While he can represent himself under 28 U.S.C. § 165, he cannot represent others and "should be limited to seeking relief for the damages that he alleges he personally suffered[.]" *May v. Bell*, No. 5:24-CV-14-BR, 2025 WL 2844784, at *3 (N.D. Tex. Jan. 13, 2025), *R. & R. adopted by* 2025 WL 2841985 (N.D. Tex. Oct. 7, 2025) (dismissing class-action claims brought by pro se plaintiff).

The undersigned recommends that Richards's pending motion to certify a class be denied, Dkt. No. 22, and that all class claims be dismissed without prejudice.

**B.    The Court lacks jurisdiction over claims seeking retrospective injunctive relief.**

Richards's pleadings state that he is suing McLane in her official capacity. Dkt. No. 10 at 3, 41–44. As the filings make clear, Richards seeks both retrospective and prospective injunctive relief. *See id.*

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). "A suit against Defendant McLane in her official capacity is simply another way of stating a claim against the TCCC or TCCO, and therefore the State of Texas." *May v. McLane*, No. 5:21-CV-271-BQ, 2022 WL 4353562, at *3 (N.D. Tex. Aug. 8, 2022). "The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly

6

and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).

However, under *Ex parte Young*, a plaintiff may sue a state official in her official capacity if the suit seeks prospective injunctive relief to redress an ongoing violation of federal law. 209 U.S. at 167–68. "To determine whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Newton v. Joseph*, No. 1:13-CV-510, 2015 WL 1321491, at *3 (E.D. Tex. Mar. 23, 2015) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, Richards alleges that McLane implemented and continues to enforce unconstitutional policies and practices. McLane argues that Richards lacks standing to assert his claims because he fails to (1) allege any injury-in-fact and (2) demonstrate that he permissibly requested retroactive relief that will redress his claimed injuries. *See* Dkt. No. 26 at 8–10. "This is a challenge to the existence of a cause of action in each of [Richards's] Section 1983 claims" and is "properly considered as an attack on the merits" of his claims. *Richards v. Taylor*, No. CIV.A. H-13-1394, 2015 WL 5310853, at *7 (S.D. Tex. Sep. 11, 2015) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. May 1981)).

The undersigned agrees that since Richards asks the Court to declare past acts unlawful, he seeks retrospective injunctive relief for which the Court lacks jurisdiction. But to the extent that Richards seeks prospective injunctive relief, the Court has subject-

7

matter jurisdiction over his claims and addresses the objection to standing as a direct attack on the merits. *See Williamson*, 645 F.2d at 415 (stating that "[w]here the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case"); *Williams v. McLane*, No. 5:24-CV-00248-H, 2025 WL 2773806, at *3 (N.D. Tex. Sep. 26, 2025) (acknowledging defendant's argument that SVP lacked standing because he failed to allege a constitutional injury but addressing the merits).

For these reasons, the district judge should grant-in-part McLane's motion under Rule 12(b)(1) and dismiss the claims for retrospective relief.

### C.      Richards fails to state a viable due process claim based on the alleged delay in progression through the treatment program.

Many of Richards's allegations concern his delayed progress through the tiered treatment program. He claims he completed Tier 3 of the program on May 6, 2024, and has been waiting ten months to appear before a panel for advancement to Tier 4. Dkt. No. 10 at 5. He argues that the delay constitutes a denial of a "seamless" transition between programming tiers and treatment progression, as required by Chapter 841. *Id.*

Richards also alleges that the treatment program is inadequate. He complains that MTC administers the treatment program but allows McLane to override treatment decisions that should be made by qualified sex-offender treatment providers. *Id.* at 9, 22. Richards alleges that staffing is inadequate due to high turnover of treatment providers, requiring residents to repeat treatment. *Id.* at 26. He also argues that the disproportionate

8

ratio of treatment providers to residents and the use of "unqualified" Affiliate Sex

Offender Treatment Providers (ASOTPs) hinder treatment. *Id.* at 26–28. Finally, he

complains that the curriculum has been amended at times and that residents are

sometimes required to repeat assignments. *Id.* at 20, 26, 33–35, 37.

Under certain circumstances, deprivations related to sex-offender treatment can

give rise to a constitutional claim. *See, e.g., Brown v. Taylor*, 911 F.3d 235, 244 (5th Cir.

2018) (per curiam) (holding that SVP's detention in jail where "he received *no* sex

offender treatment" was not reasonably related to his supervision and treatment and

therefore violated due process); *Gomez v. Gonzales*, No. 5:23-CV-00148-H, 2025 WL

755226, at *6–7 (N.D. Tex. Mar. 10, 2025) (finding that SVP stated a plausible due

process claim where he alleged that his case manager and sex-offender treatment provider

demoted his tier before a hearing).

Richards argues that the treatment he receives is "inadequate" under "reasonable

professional judgment, and contemporary treatment standards." Dkt. No. 10 at 26. This

bare-bones allegation—devoid of factual support—is insufficient to show a due process

violation. Richards concedes that he is receiving treatment, despite his dissatisfaction

with the program's curriculum, timing, and use of ASOTPs. *See, e.g.,* Dkt. No. 10 at 26–

33 (complaining about the curriculum and use of ASOTPs, which he alleges provide

inferior treatment but without factual support for that allegation); *see also Welsh v.

Correct Care Recovery Sols.*, 845 F. App'x 311, 322 (5th Cir. 2021) (affirming dismissal

of SVP's claim that defendants denied therapy thereby prolonging his period of civil

commitment, where SVP received some treatment and failed to plead facts "showing that

9

receiving additional treatment would have expedited his release"); *Rogers v. McLane*, No. 5:22-CV-130-BQ, 2023 WL 4629044, at *12 (N.D. Tex. June 30, 2023) (noting that "[plaintiff] does not contend that [d]efendants denied him all therapy; instead he acknowledges that the TCCC provided him group therapy one time per week and also assigned tier therapy tasks," which does not give rise to a substantive due process claim), *R. & R. adopted by* 2023 WL 4636894 (N.D. Tex. July 19, 2023).

The Court cannot discern a plausible due process claim based on Defendants' use of ASOTPs generally or the purported lack of a psychologist or psychiatrist overseeing Richards's treatment. Under the Texas Administrative Code § 810.3, an individual may provide sex-offender treatment by obtaining a license as an ASOTP, who is then supervised by a Licensed Sex Offender Treatment Provider (LSOTP). Tex. Admin. Code § 810.3(a), (c)(2). And in any case, "whether Defendants have complied with Texas licensing requirements is not a constitutional matter." *Rogers*, 2023 WL 4629044, at *15 (citing *Etheridge v. Miss. Dep't of Corr. Votec Schs.*, 79 F. App'x 47, 48 (5th Cir. 2003) and *Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982)). Richards fails to allege facts showing how treatment by ASOTPs and lack of oversight by a psychologist or psychiatrist delays his treatment or tier progression. He also fails to show how the treatment by the ASOTPs is constitutionally inadequate.[1] Therefore, his allegations based

---

[1] Richards claims that the ASOTPs should be directly supervised by a LSOTP in group therapy. Dkt. No. 10 at 27–28. But state law imposes no such requirement. *See* Tex. Admin. Code § 810.3(c)(8) (requiring that "[a]n ASOTP shall receive face-to-face supervision at least 1 hour per 20 hours of assessment and treatment with a minimum of 2 hours per month" while providing sex offender assessment and treatment"). And Richards cites no authority showing that the Constitution requires it.

on delaying progression or tier treatment should be rejected. *See id.* (rejecting plaintiff's arguments that ASOTP was improperly licensed).

To the extent Richards accuses Defendants—primarily McLane—of "overrul[ing] critical treatment decisions," he fails to provide supporting facts. Dkt. No. 10 at 9. He likewise fails to provide facts to undergird his claim that Defendants amend the curriculum to delay progress or intentionally make residents complete unnecessary assignments. *See Rogers*, 2023 WL 4629044, at *16 n.18 (recommending dismissal of SVP's substantive due process claim when he alleged Defendants gave assignments that were not part of the curriculum and invented rules because he provided "no facts detailing specific examples of such conduct or how it caused him particularized harm"); *id.* at *19 (dismissing plaintiff's claim when he alleged that defendants were purposely hindering his tier progression but failed to provide factual detail); *see generally DeMarco v. Davis*, 914 F.3d 383, 386–87 (5th Cir. 2019) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010))).[2]

Finally, Richards does not specify any harm resulting from the alleged denial of adequate treatment. His "purported harm—that he might have progressed more quickly through the tiers with additional [or adequate] . . . therapy—is speculative at best."

---

[2] Richards admits that other factors, like a high turnover rate, force residents to "repeat their biographies, sexual histories, and offenses [.]" Dkt. No. 10 at 26. Richards does not say he experienced this, and this concession undermines the allegations that Defendants intentionally interfere with treatment. *See Rogers*, 2023 WL 4629044, at *12 n.14 (observing that "[SVP] attributes the alleged reduction in therapy at least in part to MTC's inability to retain or hire therapists" and that the "reduction in group therapy sessions was not intentional and therefore not an actionable constitutional claim" (citations omitted)).

11

*Rogers*, 2023 WL 4629044, at \*12. While he repeatedly alleges that Defendants are interfering with his "seamless transition" between tiers and thus delaying his eventual release from his civil commitment, Richards "has not pleaded any facts suggesting when he might have been released from commitment but for the alleged reduced treatment." *Id.* His "assertion that any deprivation of therapy impeded his release is 'too attenuated to invoke further due process protections.'" *Welsh*, 845 F. App'x at 322 (quoting *Senty-Haugen v. Goodno*, 462 F.3d 876, 887 (8th Cir. 2006)).

The undersigned therefore recommends that the district judge dismiss Richards's substantive due process claim based on delaying sex-offender treatment or tier progression.

**D.      Richards fails to state a viable substantive due process claim based on conditions of confinement.**

Richards further complains generally about his conditions of confinement. But for many of these claims, he fails to allege any personal harm. Among these include his claims regarding: (1) Defendants' use of the SMU, (2) imposition of commissary or delivery restrictions due to failure to complete tests, and (3) name-calling by officials. Dkt. No. 10 at 11–14, 15–17, 11. Because he fails to allege a personal harm stemming from these claims and only complains about these issues as generally unfavorable practices, the undersigned recommends the district judge dismiss these claims for lack of standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992) (holding that a plaintiff lacks Article III standing where the alleged injury does not affect the plaintiff "in a personal and individual way"); *Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir.

2011) (per curiam) (plaintiff "would lack standing to seek § 1983 damages for violations of other prisoners' rights); *Williams*, 2025 WL 2773806, at *9 n.6 (noting that "[p]laintiff only makes a facial challenge to the policy—he does not allege . . . personal harm from . . . the policy"); *May*, 2025 WL 2844784, at *3 (recommending dismissal of some of SVP's unconstitutional conditions claims for lack of standing because he did not allege personal harm and "[could not] represent other TCCC residents").

Construing the remainder of his claims liberally, Richards alleges barely sufficient facts to infer specific harm. He claims that the physical conditions at TCCC violate his substantive due process rights by compelling him to live in the equivalent of a "maximum security prison," and he objects to double-fences topped with razor wire, security, strictly controlled movement about the facility, limited recreation time, steel doors, metal bunks and toilets, the general atmosphere, and more. Dkt. No. 10 at 10–11. He also challenges policies requiring ankle monitors and testing. *Id.* at 17–18, 19–21.

Conditions of confinement for SVPs are governed by the Due Process Clause of the Fourteenth Amendment. *Miguel v. McLane*, No. 22-10517, 2024 WL 747232, at *9 (5th Cir. Feb. 23, 2024) (citing *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982)). Because he is civilly committed, Richards is entitled to "more considerate treatment and conditions of confinement" than prison inmates, *Youngberg*, 475 U.S. at 322, but "his liberty interests are considerably less than those held by members of free society." *Senty-Haugen*, 462 F.3d at 886. "As a result, civil commitment institutions may create policies that place some restrictions on an SVP's due process rights, 'so long as [the restrictions] advance the state's interest in security, order, and rehabilitation.'" *San*

13

*Miguel v. Cochran*, No. 5:20-CV-041-C, 2022 WL 774147, at *12 (N.D. Tex. Feb. 18, 2022) (quoting *Bohannan v. Doe*, 527 F. App'x 283, 294 (5th Cir. 2013) (per curiam)), *rev'd in part on other grounds*, 2024 WL 747232; *see Kansas v. Hendricks*, 521 U.S. 346, 368 n.4 (1997) (noting that "[s]tates enjoy wide latitude in developing treatment regimens [for SVPs]"); *Brown*, 911 F.3d at 243 (noting that "the Constitution nevertheless affords a state wide latitude in crafting a civil commitment scheme").

For SVPs, "[d]ue process requires only that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." *Miguel*, 2024 WL 747232, at *9 (internal quotation marks and citations omitted). "Accordingly, the plaintiff must sufficiently allege how the conditions at the facility lack[] a reasonable relation to Texas's twin goals of long-term supervision and treatment of sexually violent predators." *Id.* (internal quotation marks and citation omitted). This Court has previously noted that "[w]here an official's decision 'is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment,' the official may be held liable for a constitutional deprivation." *May*, 2022 WL 4353562, at *4 (quoting *Youngberg*, 475 U.S. at 323). But the Fifth Circuit has stated that "proximity to prisoners and restrictive conditions alone do not state a due process claim." *Brown*, 911 F.3d at 243.

Based on his allegations, "[Richards] has not sufficiently alleged how the conditions of his civil commitment lack[] a reasonable relation to Texas's goals of 'long-term supervision and treatment' of SVPs." *Welsh*, 845 F. App'x at 322. First,

14

regarding his claims about the physical conditions at TCCC, Richards has not asserted any facts showing that his living conditions—though uncomfortable and institutional in nature—constitute a "substantial departure from accepted professional judgment, practice or standards." *May*, 2022 WL 4353562, at *4 (citation omitted); *see also Brown*, 911 F.3d at 243 (holding that "[defendant's] secure facilities—despite their restrictive rules and ungraceful living conditions—were reasonably related to the goals of supervision and treatment"); *May*, 2025 WL 2844784, at *17 (finding that complaints about conditions of confinement at TCCC—including those regarding room temperatures, unpleasant smells, loud noises, and overcrowded areas—did not state a constitutional violation).

Regarding policies requiring residents to wear GPS ankle monitors and to take polygraphs and penile plethysmographs, "[the TCCO's] GPS tracking policies are reasonably related to the goal of long-term supervision" and "polygraph and PPG examinations are useful tools to assess treatment progress." *Williams*, 2025 WL 2773806, at *9. These requirements "[do] not offend either the Fifth Amendment or the Fourteenth Amendment." *Id.*; *see, e.g., Day v. Seiler*, 560 F. App'x 316, 319 (5th Cir. 2014) (per curiam) (affirming dismissal of SVP's due process claim based on GPS monitoring); *Miguel v. Jack*, No. 23-CV-697-RP-SH, 2023 WL 6466231, at *8 (W.D. Tex. Oct. 4, 2023) (finding it "not unreasonable for TCCO/TCCC to impose restrictions on commissary privileges because [SVP] refuses to take a required [PPG] exam).[3]

---

[3] While Richards alleges that "it is not an uncommon punishment" for class members to be "arbitrarily deprived of contact with their family for months at a time" for failing a polygraph, Richards fails to allege that *he* was deprived of contact with family for any duration of time, nor does he provide any further details regarding this claim. Dkt. No. 10 at 21.

15

Because Richards fails to allege that the conditions at TCCC bear no reasonable relationship with the goals of his civil commitment—i.e., supervision and treatment—the undersigned recommends that the district judge dismiss these claims.

### D. Richards lacks standing to bring a procedural due process claim.

Richards claims that Defendants issue write-ups and impose punishments with "no procedural due process." Dkt. No. 10 at 16, 18.   But fails to allege facts showing that he suffered a specific harm and only complains about the general practice. He thus fails to demonstrate that he has standing to bring this claim. Even if he had standing, the lack of supporting facts render this claim deficient on its face. The undersigned recommends the district judge dismiss this claim.

## 4.    Recommendations

For the foregoing reasons, the undersigned **RECOMMENDS** that the United States District Judge (1) **GRANT** Defendants McLane and MTC's motions to dismiss, Dkt. Nos. 26, 28; (2) **DENY** his motion to certify class, Dkt. No. 22; (3) **DENY** his motion for leave to join party as defendant, Dkt. No. 49;[4] (3) and (4) dismiss his official-capacity claims against McLane for retrospective relief without prejudice and all others with prejudice. Dkt No. 10.

---

[4] Richards seeks to join Cecile Erwin Young, Executive Commissioner of the Texas Health and Human Services Commission (HHSC), as a defendant because he claims that Texas Health & Safety Code § 841.0835 "requires HHSC to coordinate with [TCCO] . . . to provide psychiatry and disability services" for "a committed person with an intellectual or developmental disability, a mental illness, or a physical disability." Dkt. No. 49 at 2 (emphasis omitted). But Richards cannot bring this claim on behalf of other individuals, and he does not claim that he suffers from any kind of disability. Further, he fails to provide any facts or other evidence supporting these allegations.

16

5.    **Right To Object**

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: May 12, 2026.

_____
AMANDA 'AMY' R. BURCH
UNITED STATES MAGISTRATE JUDGE

17